Nos. 24-5150 & 24-5154

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

ROBERT B. BERGDAHL, *Appellee/Cross-Appellant*,

v.

UNITED STATES, *Appellant/Cross-Appellee.*

---

Appeal from the United States District Court
for the District of Columbia

---

# APPELLEE/CROSS-APPELLANT'S PETITION FOR PANEL REHEARING AND REHEARING EN BANC


EUGENE R. FIDELL
D.C. Bar No. 112003
Feldesman LLP
1129 20th St., N.W., Ste. 400
Washington, DC 20036
(202) 256-8675 (mobile)
efidell@feldesman.com

FRANKLIN D. ROSENBLATT
D.C. Bar No. 1600851
151 E. James H. Meredith Dr.
Jackson, MS 39201
frosenblatt@mc.edu

STEPHEN I. VLADECK
D.C. Bar No. 988509
600 New Jersey Ave., N.W.
Washington, DC 20001
stephen.vladeck@law.georgetown.edu

STEPHEN A. SALTZBURG
D.C. Bar No. 370949
2000 H St., N.W.
Washington, DC 20052
ssaltz@law.gwu.edu

*Attorneys for Appellee/Cross-Appellant*


September 30, 2026

## Index


Table of Authorities ........ ii

Glossary ........ iv

Statement Concerning Rehearing En Banc ........ 1

Argument ........ 3

I. THE PANEL MISTAKENLY TREATED THE PERMISSIBLE RELIEF AS LIMITING THE DISTRICT COURT'S SUBJECT MATTER JURISDICTION ........ 3

II. IF VACATUR EXCEEDED ITS POWER, THE DISTRICT COURT SHOULD BE INSTRUCTED TO ADDRESS THE MERITS AND FASHION SUCH DECLARATORY AND INJUNCTIVE RELIEF AS IS WITHIN ITS POWER ........ 9

III. IF THE DISTRICT COURT LACKED JURISDICTION, THE CASE SHOULD BE TRANSFERRED TO THE COURT OF FEDERAL CLAIMS ........ 13

Conclusion ........ 14

Certificate of Compliance ........ 16

Certificate of Service ........ 16

Addendum

Certificate as to Parties, Rulings Under Review, and Related Cases
Panel Decision

## Table of Authorities*

Cases:

*In re al-Nashiri*, 921 F.3d 224 (D.C. Cir. 2019)....................................3, 10, 11, 14
*Anderson v. Carter*, 802 F.3d 4 (D.C. Cir. 2015)..................................................12
* *Bergdahl v. United States*, 2026 WL 2577131 (D.C. Cir. Sept. 1, 2026) ......1, 2, 5
*Brito v. Garland*, 22 F.4th 240 (1st Cir. 2021).........................................................9
* *Burns v. Wilson*, 346 U.S. 137 (1953) ...................................................................2
*Campbell v. Kendall*, No. 22-5228, 2024 WL 1262827
(D.C. Cir. Mar. 26, 2024) (per curiam) ...............................................................1
*Clark v. Paul Gray, Inc.*, 306 U.S. 583 (1939)...........................................................5
*Foretich v. United States*, 351 F.3d 1198 (D.C.Cir.2003).......................................12
* *Goble v. Marsh*, 684 F.2d 12 (D.C. Cir. 1982)........................................................10
*Green v. Mansour*, 474 U.S. 64 (1985) .......................................................................9
*Kauffman v. Sec'y of the Air Force*, 415 F.2d 991 (D.C. Cir. 1969)........................1
*Kidwell v. Dep't of the Army*, 56 F.3d 279 (D.C. Cir. 1995).....................................7
*King v. Morton*, 520 F.2d 1140 (D.C. Cir. 1975) ......................................................5
*Kluge v. U.S. Government*, Civil No. 19-2618,
2021 WL 11747723 (D.D.C. Aug. 24, 2021)......................................................13
*Larrabee v. Del Toro*, 45 F.4th 81 (D.C. Cir. 2022) ..................................................1
*Luke v. United States*, No. 13-5169, 2014 WL 211305
(D.C. Cir. Jan. 13, 2014) (per curiam)...................................................................1
*Make the Road New York v. Wolf*, 962 F.3d 612 (D.C. Cir. 2020) ..........................9
*Matias v. United States*, 923 F.2d 821 (Fed. Cir. 1990).............................................13
*Nielsen v. Preap*, 586 U.S. 392 (2019).........................................................................9
*Penland v. Mabus*, 78 F. Supp. 3d 484 (D.D.C. 2015).................................................8
*Penland v. Mabus*, 181 F. Supp. 3d 100 (D.D.C. 2016)...............................................2
*Powell v. McCormack*, 395 U.S. 486 (1969)................................................................9
*Priest v. Sec'y of the Navy*, 570 F.2d 1013 (D.C. Cir. 1977) ....................................1
* *Sanford v. United States*, 586 F.3d 28 (D.C. Cir. 2009).............................1, 3, 10
* *Schlesinger v. Councilman*, 420 U.S. 738 (1976) ..................................2, 6, 7, 10
*Scott v. United States*, No. 19-5044, 2019 WL 3229390
(D.C. Cir. June 25, 2019) (per curiam)...................................................................1
*Sinclair v. Kleindienst*, 711 F.2d 291 (D.C. Cir. 1983)............................................13
*Stone v. United States*, 683 F.2d 449 (D.C. Cir. 1982)................................................7
*Thrasher v. United States*, No. 24-85, 2025 WL 1203066
(Fed. Cl. Apr. 25, 2025) ..........................................................................................14

* Authorities upon which we chiefly rely are marked with asterisks.

*Tootle v. Sec'y of the Navy*, 446 F.3d 167 (D.C. Cir. 2006)....................................7
* *United States ex rel. New v. Rumsfeld*, 448 F.3d 403 (D.C. Cir. 2003) ................1
*United States v. Thomas*, 22 M.J. 388 (C.M.A. 1986) ..........................................11
*Wallace v. United States*, Civil No. 25-2178, 2026 WL 1256945
(D.D.C. May 7, 2026), *appeal pending*, No. 26-5233........................................8
*White v. Sec'y of the Army*, 878 F.2d 501 (D.C. Cir. 1989) ..................................11


Constitution and Statutes:

U.S. Const.
Art. III..............................................................................................................9
amend. 5 ..................................................................................................4, 5, 11
Act of Oct. 21, 1976, Pub. L. No. 94-574, 90 Stat. 2721 .........................................6
Administrative Procedure Act, 5 U.S.C. § 551(1) (f)...............................................5
Military Commissions Act of 2009, 10 U.S.C. § 948c.............................................3
10 U.S.C. § 1552(f) ...................................................................................................2
28 US.C. § 610 ........................................................................................................13
* 28 U.S.C. § 1331 ...........................................................................5, 6, 7, 8, 10
Little Tucker Act, 28 U.S.C. § 1346........................................................................14
Tucker Act, 28 U.S.C. § 1491 ...........................................................................13, 14
* 28 U.S.C. § 1631 ............................................................................................13, 14
* Declaratory Judgment Act, 28 U.S.C. § 2201 .........................................................8
28 U.S.C. § 2401(a).................................................................................................13
Military Justice Act of 1983, Pub. L. No. 98-209, 97 Stat. 1293 (1983) .................6
Military Pay Act, 37 U.S.C. § 204(a)(1) ...........................................................13, 14
National Defense Authorization Act for Fiscal Year 2024, Pub. L. No. 118-31,
137 Stat. 136 (2023) ..................................................................................................6


Regulations and Rules of Court:

Fed. Cl. R. 3.1(a)(4)................................................................................................14
Fed. Cl. R. 5.5(d)(1) ...............................................................................................14
* Fed. R. Civ. P. 54(c) ................................................................................................8
Rules for Courts-Martial, Manual for Courts-Martial, United States:
R.C.M. 104(a)(1) .....................................................................................................7
R.C.M. 902 ............................................................................................................5, 7
Rules of Judicial Conduct for Army Trial and Appellate Judges, R. 2.11 ...............7

Miscellaneous:

Max Jesse Goldberg, *Congressional Influence on Military Justice*, 130 YALE L.J. 2110 (2021) ........................................................................ 12

**Glossary**

CAAF .................................................... U.S. Court of Appeals for the Armed Forces
R.C.M. .............................................................................. Rules for Courts-Martial
UCI .......................................................................... unlawful command influence
UCMJ ...................................................................... Uniform Code of Military Justice

PETITION FOR PANEL REHEARING
AND REHEARING EN BANC

**Statement Concerning Rehearing En Banc**

By holding that the district court lacked jurisdiction, the panel decision conflicts with *Campbell v. Kendall*, No. 22-5228, 2024 WL 1262827 (D.C. Cir. Mar. 26, 2024) (per curiam) (affirming dismissal of non-custodial collateral attack on the merits), *Larrabee v. Del Toro*, 45 F.4th 81, 86 (D.C. Cir. 2022), *Scott v. United States*, No. 19-5044, 2019 WL 3229390 (D.C. Cir. June 25, 2019) (per curiam) (affirming dismissal of constitutional non-custodial collateral attack on full-and-fair-consideration grounds and the merits), *Luke v. United States*, No. 13-5169, 2014 WL 211305 (D.C. Cir. Jan. 13, 2014) (per curiam) (affirming non-custodial collateral attack claim on full-and-fair-consideration grounds and the merits), *Sanford v. United States*, 586 F.3d 28, 32 (D.C. Cir. 2009), *United States ex rel. New v. Rumsfeld*, 448 F.3d 403, 406 (D.C. Cir. 2003), *Priest v. Sec'y of the Navy*, 570 F.2d 1013, 1016 (D.C. Cir. 1977), and *Kauffman v. Sec'y of the Air Force*, 415 F.2d 991, 994-96 (D.C. Cir. 1969).

The full court's consideration is necessary to maintain uniformity of decisions and to dispel confusion with respect to the relief available in non-custodial collateral attacks on courts-martial.

The panel decision suggests (16) that it was impermissible for Sgt. Bergdahl to seek *de novo* review of matter unsuccessfully raised in the military courts. Not so.

*Burns v. Wilson*, 346 U.S. 137, 142 (1953) (plurality opinion), held that such review is available if the military courts have "manifestly refused to consider" an issue (here, the critical *al-Nashiri* issue). *See* Bergdahl Final Opening Br. 10-11. The panel decision also reads *Schlesinger v. Councilman*, 420 U.S. 738 (1976), so parsimoniously as to render illusory the Supreme Court's recognition of federal question jurisdiction over cases such as this. Whatever *Councilman*'s effect may be with respect to vacatur, nothing in it precludes declaratory relief.

We are unable to find a procedural setting that would thread the needle created by the panel's reading and afford *Councilman* any real-world effect. A board for correction of military records cannot overturn a court-martial except to implement the action of reviewing authorities. It can grant clemency only as to the sentence, not as to the underlying conviction. 10 U.S.C. § 1552(f); *e.g., Penland v. Mabus*, 181 F. Supp. 3d 100, 105 (D.D.C. 2016). The panel's reference to the correction board as an available collateral remedy (15) is therefore misplaced.[1]

[1] Seeking sentence clemency from the correction board would be futile. Having repeatedly told rallygoers that Sgt. Bergdahl deserved to be executed, JA 28, *available at* https://www.youtube.com/watch?v=S2MJeMm950M, President Trump tweeted that the adjudged sentence was "a complete and total disgrace to our Country and to our Military." JA 308. Secretary of Defense Hegseth, when he was co-hosting "Fox & Friends Weekend," told his nationwide audience that Sgt. Bergdahl should *at a minimum* be behind bars for the rest of his life. *See* Fox & Friends, *Pete Hegseth on What He Expects from Bowe Bergdahl*, Fox News, Oct. 16, 2017, https://www.foxnews.com/video/5612529645001 ("you *never* want a Bowe Bergdahl *ever* walking free . . . the least he can do is serve behind bars for the rest of his life . . . a dirtbag") (emphases added).

On the merits (which the panel did not reach), the case presents two questions of exceptional importance:

> (a) whether a court-martial may be sustained on collateral review when the military judge has concealed a substantial basis for disqualification, *see In re al-Nashiri*, 921 F.3d 224 (D.C. Cir. 2019), and the military courts have refused to address the matter; and
>
> (b) whether, under the "close look" demanded by *Sanford*, 586 F.3d at 32, such concealment must be taken into account when evaluating all of the facts and circumstances regarding unlawful command influence (UCI) by officials of the political branches, including above all the President, whose ability to exert such influence is unique given his status as commander in chief of the armed forces.

If the panel decision stands, an "alien unprivileged enemy belligerent"[2] facing a military commission will, given *al-Nashiri*, have greater assurance of trial before a disinterested judge than will American military personnel facing court-martial. That would be a shocking anomaly.

## Argument

### I

### THE PANEL MISTAKENLY TREATED THE PERMISSIBLE RELIEF AS LIMITING THE DISTRICT COURT'S SUBJECT MATTER JURISDICTION

The panel saw this as a case about jurisdiction. In our view, it is a case about remedies, and ultimately about what is to be done when a judge has an undisclosed

[2] Military Commissions Act of 2009, 10 U.S.C. § 948c.

conflict of interest and senior members of the political branches exert improper influence over the course of a judicial proceeding. The panel took a wrong turn and never addressed the merits, despite their importance to public confidence in the administration of justice in the armed forces.

Whether the district court had jurisdiction is a function of whether the complaint set forth a federal cause of action. Sgt. Bergdahl's amended complaint, ECF No. 3, set forth two:

> Causes of Action
>
> Count I (UCI)
>
> 75. The averments of ¶¶ 1-55 are incorporated herein by reference.
>
> 76. The Due Process Clause applies to courts-martial.
>
> 77. Both President Trump and Senator McCain grossly abused their official authority.
>
> 78. Because CAAF [the U.S. Court of Appeals for the Armed Forces] mistakenly found that the government had carried its UCI burden of proof beyond a reasonable doubt and that an intolerable strain had not been placed on public confidence in the administration of justice, plaintiff's conviction and sentence violated due process and are invalid.
>
> Count II (Failure to Disclose Ground for Disqualification)
>
> 79. The averments of ¶¶ 1-31 and 56-74 are incorporated herein by reference.
>
> 80. Judge Nance had a duty to disclose his DOJ job application and a duty in any event not to mislead plaintiff about his future plans.

81. By failing to disclose his job application and indicating that he was simply going to retire, and then citing that as a basis for denying the renewed UCI motion, Judge Nance—

(a) concealed a material financial interest;
(b) thwarted plaintiff's opportunity to conduct voir dire, challenge him for cause, reconsider his pleas and decision to waive trial by jury; and thereby
(c) denied him a fair trial before an impartial judge as guaranteed by the Fifth Amendment.

82. Because plaintiff's conviction and sentence violated due process and R.C.M. 902, they are invalid.

A

According to the panel, the district court lacked jurisdiction not because Sgt. Bergdahl had failed to plead a federal question, but because he had "crossed the line" (15) by seeking injunctive relief setting aside his conviction. This was error because it substitutes the question of relief for the question of whether a case presents a federal question. Just as it excluded courts-martial from the sweep of the general definition of "agency" in the Administrative Procedure Act, 5 U.S.C. § 551(1) (f), Congress could have written 28 U.S.C. § 1331 to preclude particular forms of relief. It did not.

For a century, federal question cases, like diversity cases, were subject to a statutory jurisdictional amount. If a case did not meet the threshold, it would be dismissed for want of jurisdiction. *E.g., Clark v. Paul Gray, Inc.*, 306 U.S. 583, 590 (1939); *see also King v. Morton*, 520 F.2d 1140, 1145 (D.C. Cir. 1975). But there

has not been a jurisdictional amount for federal question cases against the government for fifty years. *See* Act of Oct. 21, 1976, Pub. L. No. 94-574, 90 Stat. 2721, § 2. Congress thus knows how to impose a jurisdictional requirement for § 1331 cases. It has amended §1331 from time to time (twice since *Councilman*) but has never written in a requirement that makes the presence of any request for injunctive relief in the nature of vacatur juridical kryptonite that kills off a case regardless of what other relief the complaint seeks.

Moreover, when Congress extended the Supreme Court's certiorari jurisdiction in 1983 to sweep in cases in which CAAF granted review, it imposed limits on the power of the correction and discharge review boards with regard to courts-martial, *see* Military Justice Act of 1983, Pub. L. No. 98-209, 97 Stat. 1293, 1405-07, §§ 10-11 (1983), but took no action with respect to collateral review under § 1331. When it later removed those limits and subjected all final CAAF decisions to review on writ of certiorari, *see* National Defense Authorization Act for Fiscal Year 2024, Pub. L. No. 118-31, 137 Stat. 136, 261, § 533 (2023), it similarly made no change in § 1331.

Congress was aware of *Councilman* from the time the case was decided. *See* Bergdahl Final Opening Br. 8 n.7. In the ensuing half-century, it has twice amended § 1331 and amended two sections of title 10 in ways that affect collateral review of courts-martial. Given that long period, it must be deemed to have been aware of how

this court was consistently reading *Councilman*. Yet it has never amended § 1331 in a way that suggests the panel's harsh and improbable result.

B

The court's treatment of cases that – either *in haec verba* or "in essence," *Tootle v. Sec'y of the Navy*, 446 F.3d 167, 169 (D.C. Cir. 2006) (quoting *Kidwell v. Dep't of the Army*, 56 F.3d 279, 284 (D.C. Cir. 1995)) – seek non-tort money damages in excess of $10,000 is also instructive. In such cases, plaintiffs are afforded an opportunity to cure the jurisdictional defect by waiving the excess. *E.g., Stone v. United States*, 683 F.2d 449, 452-54 (D.C. Cir. 1982). Rather than having their case dismissed for want of jurisdiction, they face a sometimes-painful choice: reduce their demand or acquiesce in a transfer to the Court of Federal Claims.

Sgt. Bergdahl's complaint prominently sought both declaratory and injunctive relief, both in the title and in the prayer. In both places, it gave pride of place to declaratory relief. Paragraph 83 of the amended complaint ("Relief Requested") begins as follows:

> 83. Plaintiff prays that the Court enter judgment—
>
> (a) declaring that his conviction and sentence were obtained in violation of the Fifth Amendment, R.C.M. 104(a)(1) and 902, and Rule 2.11 of the Rules of Judicial Conduct for Army Trial and Appellate Judges;

It concluded with a request for "such other and further relief as may in the circumstances be just and proper." ECF No. 3 at 15 (¶ 83(c)).

Nothing in the text of either § 1331 or the Declaratory Judgment Act, 28 U.S.C. § 2201, precludes such relief. Indeed, § 2201(a) provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." The final clause makes it clear that the district court's unquestioned power to adjudicate federal questions and render a declaratory judgment thereon is not affected by other relief (such as injunctive relief) a plaintiff may have sought. The panel decision cannot be reconciled with the plain meaning of the Declaratory Judgment Act.[3]

C

Fed. R. Civ. P. 54(c) provides:

> A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. *Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.* [Emphasis added.]

If, as the panel thought, Sgt. Bergdahl either asked too much or the district court granted too much by way of relief, the answer under the second sentence of

[3] *Wallace v. United States*, Civil No. 25-2178, 2026 WL 1256945 (D.D.C. May 7, 2026), *appeal pending*, No. 26-5233, is a *pro se* non-habeas collateral attack on a court-martial. The district court ruled that Wallace's claim for back pay and benefits that seemed to far exceed $10,000 was beyond its jurisdiction, but, citing *Penland v. Mabus*, 78 F. Supp. 3d 484, 492 (D.D.C. 2015), held with respect to his claim for declaratory relief that "it is . . . 'clear' that the Court has 'jurisdiction to consider' his attack on the validity of his court-martial." 2026 WL 1256945 at *4.

the rule was simply to "grant the relief to which [he] is entitled." The rule treats demands that go beyond that to which a party is entitled as a matter of fashioning correct relief, rather than planting a jurisdictional landmine that is lethal to the entire case. To treat "crossing the line" as "game over" in this fashion is not only incorrect,[4] but highly unfair given the fact that the court has repeatedly entertained cases seeking vacatur and the period for seeking direct review of CAAF's decision by writ of certiorari expired long before the government raised its jurisdictional objection. Fortunately, if the panel's decision was correct, there is a solution.

## II

## IF VACATUR EXCEEDED ITS POWER, THE DISTRICT COURT SHOULD BE INSTRUCTED TO ADDRESS THE MERITS AND FASHION SUCH DECLARATORY AND INJUNCTIVE RELIEF AS IS WITHIN ITS POWER

Had the government raised its jurisdictional objection in the district court, and had that court embraced it, Sgt. Bergdahl would have been able to make an informed

---

[4] *Green v. Mansour*, 474 U.S. 64, 72 (1985) ("declaratory relief may be available even though an injunction is not"); *Powell v. McCormack*, 395 U.S. 486, 518 (1969) ("a request for declaratory relief may be considered independently of whether other forms of relief are appropriate"); *Brito v. Garland*, 22 F.4th 240, 250-52 (1st Cir. 2021) (agreeing with argument that "even if the district court lacked jurisdiction to enjoin the government as it did, it retained jurisdiction to grant declaratory relief"); *see also Make the Road New York v. Wolf*, 962 F.3d 612, 635 (D.C. Cir. 2020) ("So, like the Supreme Court, we 'need not resolve whether we would have jurisdiction' to enter an injunction to establish Article III redressability because the district court 'had jurisdiction to entertain the plaintiffs' request for declaratory relief[.]'") (quoting *Nielsen v. Preap*, 586 U.S. 392, 402 (2019)).

decision regarding whether to frame his request for injunctive relief as he did. Because the government waited until it lost on the *al-Nashiri* issue, he was denied that opportunity.

The proper remedy for this unfairness is to allow him to adjust his sights with respect to relief (including seeking expungement of records, a possibility the panel noted but declined to examine (12 n.3). This would be consistent with *Goble v. Marsh*, 684 F.2d 12, 13 (D.C. Cir. 1982) (noting that "the District Court should have granted leave to amend the complaints to cure the jurisdictional defects").

If necessary, Sgt. Bergdahl will recede from the part of his request for injunctive relief that seeks to overturn his conviction.[5] That would remove the cloud the panel discerned over the district court's jurisdiction, and that court will have to complete its review. No court – neither in the military justice system nor the district court – has *ever* addressed Col. Nance's conduct or performed a holistic examination of the UCI issue that takes it into account. The "close look" the court required in *Sanford* has yet to be provided on this overarching issue.

---

[5] Sgt. Bergdahl's request for injunctive relief also asked that "all rights, privileges, and property of which he has been deprived by reason of the conviction be restored." ECF No. 3 (¶ 83(b)). The term "property" is capacious enough to include intangible property such as a claim for back pay. Even if injunctive relief under § 1331 cannot extend to vacatur of a conviction, lesser injunctive relief such as restoration of property is not precluded by *Councilman*. By failing to distinguish among the forms of injunctive relief Sgt. Bergdahl sought, the panel painted with too broad a brush.

The sole reason the district court gave for not doing so – that the *al-Nashiri* vacatur grants all the relief that could possibly be given – is mistaken. *See* Bergdahl Final Opening Br. 38-40, 53. Relief for UCI can (and here should) lead to a dismissal of the charges *with prejudice*, consistent with the settled case law that treats it as the "mortal enemy" of military justice. *E.g., United States v. Thomas*, 22 M.J. 388, 393 (C.M.A. 1986). Such relief goes well beyond the "mulligan" of a vacatur that leaves the door open, in theory, to further proceedings. Worse yet, if vacatur is off the table, Sgt. Bergdahl's claim for declaratory relief becomes even more salient because the district court's failure to conduct a holistic assessment rested explicitly on the vacatur it ordered in reliance on *al-Nashiri*. Removing vacatur from the equation pulls the rug out from under the district court's failure to engage on the UCI issue.

A declaratory judgment alone is not the outcome we would have preferred, but a citizen who has been denied due process is at least entitled to have a federal court say so in a judgment. This court has correctly noted the "serious stigma" and adverse practical consequences of anything other than an honorable discharge in *White v. Sec'y of the Army*, 878 F.2d 501, 503 (D.C. Cir. 1989). Even if his conviction cannot be vacated, Sgt. Bergdahl retains a live – and cognizable – claim for declaratory relief based on that stigma and those consequences.

A judicial declaration that his conviction was obtained in violation of the Fifth Amendment's Due Process clause falls short of vacatur, but would not be an empty

gesture. As Chief Judge Srinivasan observed in *Anderson v. Carter*, 802 F.3d 4, 12 (D.C. Cir. 2015) (Srinivasan, J., concurring in part & dissenting in part), "[a] declaratory judgment pronouncing the defendants' actions unconstitutional could help restore appellant's reputation and status in the journalistic community, potentially affecting his ability to obtain employment." He added that "[t]he harm appellant alleges is therefore not a 'lingering effect of an otherwise moot government action,' [*Foretich v. United States*, 351 F.3d 1198 (D.C. Cir. 2003)] at 1213, but rather is the primary and continuing effect of an unretracted termination order." An extant court-martial conviction is certainly "unretracted."

A declaratory judgment couched in the strong language that the outrageous conduct of President Trump and Sen. McCain merits would also serve the important public interest in deterring improper comments and threats by officials of the political branches. *See* Bergdahl Final Opening Br. 56-59; Bergdahl Final Reply Br. 18. If the panel decision stands, nothing will stand in the way of such officials to keep meddling in courts-martial.[6] A declaratory judgment may not pack the wallop of a vacatur, but it can still have a significant deterrent effect.

[6] *See generally* Max Jesse Goldberg, *Congressional Influence on Military Justice*, 130 YALE L.J. 2110, 2129-31, 2135, 2139-40 (2021).

## III

## IF THE DISTRICT COURT LACKED JURISDICTION, THE CASE SHOULD BE TRANSFERRED TO THE COURT OF FEDERAL CLAIMS

The panel decision makes no reference to 28 U.S.C. § 1631, which provides:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court (or, for cases within the jurisdiction of the United States Tax Court, to that court) in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

Section 610 includes this court, the district court, and the Court of Federal Claims. The latter court has jurisdiction over money claims arising from courts-martial under the Tucker Act, 28 U.S.C. § 1491. *E.g., Matias v. United States*, 923 F.2d 821 (Fed. Cir. 1990). Since the panel directed the district court to dismiss for lack of jurisdiction, it should have either itself transferred the case to the Court of Federal Claims or instructed the district court to do so. As our opening brief explained:

> If the district court lacked jurisdiction or the case were barred by sovereign immunity, transfer to the Court of Federal Claims for adjudication of Sgt. Bergdahl's entitlement to pay under 37 U.S.C. § 204(a)(1) would be warranted. 28 U.S.C. § 1631. Requiring him to file a new case there would not be in the interest of justice because it would be time-barred. 28 U.S.C. § 2401(a); *Sinclair v. Kleindienst*, 711 F.2d 291, 294 (D.C. Cir. 1983); *Kluge v. U.S. Government*, Civil No. 19-2618, 2021 WL 11747723 at *2-3 (D.D.C. Aug. 24, 2021).

Our reply brief added:

> The government's rejoinder (at 11 n.3) is that transfer would be improper because Sgt. Bergdahl never invoked the Military Pay Act. The government cites no case law in support of that contention and we know of none. Moreover, under that court's rules, Sgt. Bergdahl would have not only a right, but a duty to file an amended complaint. Fed. Cl. R. 3.1(a)(4) states: "Within 28 days after service of the notice of filing, the plaintiff must file an amended complaint, conforming to the requirements of RCFC 5.5(d)(1) and setting forth the claim or claims transferred." See, e.g., *Thrasher v. United States*, No. 24-85, 2025 WL 1203066 (Fed. Cl. Apr. 25, 2025). Even if the rule were not pellucid, the same result would follow. Sgt. Bergdahl had no reason to invoke the Military Pay Act below because he was not suing under the Little Tucker Act, and the district court has no jurisdiction under the (big) Tucker Act.

Sgt. Bergdahl has a Tucker Act claim for the pay and allowances to which he was lawfully entitled through the end of his enlistment. His complaint in the district court was filed within the statute of limitations for actions against the government, so he benefits from § 1631's relation-back provision. If the case is not transferred, that claim will be barred by the statute of limitations. There is thus good cause to transfer the case if the district court indeed lacked jurisdiction.

## Conclusion

Instead of remanding with instructions simply to dismiss, the court should remand with instructions to rule on the merits of the UCI issue on the basis of the entire record, including – importantly – the unrebutted evidence relating to the *al-Nashiri* issue. If it finds that the court-martial violated due process and was invalid, the district court should determine what relief is just and proper, including but not

limited to a declaratory judgment to that effect and such injunctive relief as it has the power to order. In the alternative, the panel decision should be modified either to transfer the case to the Court of Federal Claims or instruct the district court to do so.

Respectfully submitted,

/s/ *Eugene R. Fidell*
EUGENE R. FIDELL
D.C. Bar No. 112003
Feldesman LLP
1129 20th St., N.W., Ste. 400
Washington, DC 20036
(202) 256-8675 (mobile)
efidell@feldesman.com

/s/ *Franklin D. Rosenblatt*
FRANKLIN D. ROSENBLATT
D.C. Bar No. 1600851
151 E. James H. Meredith Dr.
Jackson, MS 39201
(202) 793-0005
frosenblatt@mc.edu

/s/ *Stephen A. Saltzburg*
STEPHEN A. SALTZBURG
D.C. Bar No. 370949
2000 H St., N.W.
Washington, DC 20052
(202) 994-7089
ssaltz@law.gwu.edu

/s/ *Stephen I. Vladeck*
STEPHEN I. VLADECK
D.C. Bar No. 988509
600 New Jersey Ave., N.W.

Washington, DC 20001
(202) 662-9313
stephen.vladeck@law.georgetown.edu

*Attorneys for Appellee/Cross-Appellant*

September 30, 2026

CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g) and based on the word count function in Microsoft Word for Mac 2026, I certify that this petition complies with the type-volume limitations of Rule 40(d)(2) because it contains 3803 words, excluding the parts exempted by Rule 32(f), and that it complies with the typeface and type style requirements of Rules 32(a)(5) and (a)(6).

/s/ *Eugene R. Fidell*

CERTIFICATE OF SERVICE

I certify that, I have, this 30th day of September, 2026, filed the original and 19 copies of this petition with the Clerk of the Court in addition to filing it via the CM/ECF system. Opposing counsel are registered CM/ECF users and are served automatically by that system.

/s/ *Eugene R. Fidell*

# ADDENDUM

CERTIFICATE AS TO PARTIES, RULINGS UNDER REVIEW, AND RELATED CASES

*Parties and Amici.* Appellee Robert B. Bergdahl is the cross-appellant and was the plaintiff in the district court. The United States is the appellant/cross-appellee and was the defendant below. There are no *amici* in this court. The Navy-Marine Corps Appellate Defense Division filed an *amicus* brief in support of Sgt. Bergdahl in the U.S. Court of Appeals for the Armed Forces (CAAF), as did Professors Joshua E. Kastenberg and Rachel E. VanLandingham. CAAF denied leave to a group of former Article III and military judges who sought to file an *amicus* brief in support of Sgt. Bergdahl's 2017 unlawful command influence writ-appeal petition.

*Rulings Under Review.* The rulings under review are the panel's September 1, 2026 decision (reproduced *infra*), the district court's judgment entered on July 25, 2023 and denial of reconsideration on March 31 and May 23, 2024, and underlying decisions by the U.S. Army Court of Criminal Appeals and the U.S. Court of Appeals for the Armed Forces.

*Related Cases.* There are no related cases in this court, the district court, or the military courts. The jurisdictional issue decided by the panel is presented in several cases in the district court and one in this court (*Wallace v. United States*, No. 26-5233).

/s/ Eugene R. Fidell

# United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Argued December 12, 2025 Decided September 1, 2026

No. 24-5150

ROBERT B. BERGDAHL,
APPELLEE

v.

UNITED STATES OF AMERICA,
APPELLANT

---

Consolidated with 24-5154

---

Appeals from the United States District Court
for the District of Columbia
(No. 1:21-cv-00418)

---

*Bradley Hinshelwood*, Attorney, U.S. Department of Justice, argued the cause for Appellant/Cross-Appellee. With him on the briefs were *Brett A. Shumate*, Assistant Attorney General, and *Melissa N. Patterson*, Attorney.

AUTHENTICATED
U.S. GOVERNMENT
INFORMATION
GPO

*Eugene R. Fidell* argued the cause for Appellee/Cross-Appellant. With him on the briefs were *Stephen I. Vladeck*, *Franklin D. Rosenblatt*, and *Stephen A. Saltzburg*.

Before: SRINIVASAN, *Chief Judge*, WILKINS and KATSAS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

WILKINS, *Circuit Judge*: In 2009, Robert B. Bergdahl was a soldier in the U.S. Army stationed in Afghanistan. During his deployment, Bergdahl left his post without permission to hike to headquarters to complain about conditions and leadership deficiencies within his unit. During the journey, he was captured by the Taliban-allied "Haqqani network" and held hostage for five years. In that time, Bergdahl was kept in brutal conditions and tortured. Bergdahl's disappearance led to an extensive search and rescue mission, which resulted in several injuries of other military personnel. In 2014, President Obama approved Bergdahl's exchange for five Taliban members detained at Guantanamo Bay. The exchange was the subject of widespread political discussions. Upon his return, a general court martial followed. Military authorities preferred court martial charges against Bergdahl for desertion with intent to shirk hazardous duty and misbehavior before the enemy in violation of the Uniform Code of Military Justice. During his tribunal procedures, Bergdahl pled guilty to his charges, and at the conclusion of the general court-martial, the presiding military judge, Colonel Jeffery Nance, imposed a dishonorable discharge as opposed to the 14-year prison sentence requested by the prosecution.

Based on commentary from President Trump, as a candidate and as President, alleged partiality on behalf of the presiding military judge, and other issues, Bergdahl filed suit

in the United States District Court for the District of Columbia seeking "collateral review of an unconstitutional conviction by a general court-martial" on due process grounds under the Fifth Amendment of the United States Constitution, the Rules for Court-Martial, and Rule 2.11 of Rules of Judicial Conduct for Army Trial and Appellate Judges. J.A. 557. The District Court granted in part and denied in part the government's motion to dismiss and granted in part and denied in part Bergdahl's motion for summary judgment. Ultimately, the District Court vacated all orders and rulings by the military court as of October 16, 2017, and rendered them "void." J.A. 559. Both parties filed timely appeals.

This case presents nuanced questions regarding jurisdiction and the evolving relationship between Article III courts and military courts. Jurisdiction here turns on whether the remedy sought falls within a district court's power to grant. Because Article III district courts lack jurisdiction on collateral review to vacate court-martial judgments, the District Court lacked jurisdiction over Bergdahl's claims. Therefore, we remand the case to the District Court to dismiss for lack of jurisdiction.

## I.

### A.

"Military law . . . is a jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment." *Burns v. Wilson*, 346 U.S. 137, 140 (1953) (plurality opinion). Pursuant to its authority to regulate the armed forces, Congress has long provided for a separate system of military courts to adjudicate charges brought against servicemembers. *Ortiz v. United States*, 585 U.S. 427, 431

(2018) (citing *Solorio v. United States*, 483 U.S. 435, 436 (1987)).

Today, the military tribunal process begins with the court-martial proceeding itself, in which "an officer-led tribunal [is] convened to determine guilt or innocence and levy appropriate punishment, up to lifetime imprisonment or execution." *Id.* at 432; *see, e.g.*, 10 U.S.C. §§ 816–867 (court-martial and appellate procedures). A servicemember's appeal generally proceeds to one of four service-specific Court of Criminal Appeals ("CCAs") for the Army, Navy–Marine Corps, Air Force, or Coast Guard. *Id.* Those appellate courts sit in panels of at least three judges, who are either military officers or civilians, and review cases within the jurisdiction prescribed by statute. 10 U.S.C. § 866(a)–(b). An appeal culminates in the highest court in the court-martial system: The Court of Appeals for the Armed Forces ("CAAF"), which is a "court of record" made up of five civilian judges appointed to serve 15-year terms. *Id.* §§ 941–942. "The CAAF must review certain weighty cases (including those in which capital punishment was imposed), and may grant petitions for review in any others." *Ortiz*, 585 U.S. at 432. And since 1983, the Supreme Court has been the only Article III court with statutory authority to directly review specified CAAF decisions by writ of certiorari. 28 U.S.C. § 1259; 10 U.S.C. § 867a.

Prior to 1983, Congress had not "conferred on any Art. III court jurisdiction directly to review court-martial determinations." *Schlesinger v. Councilman*, 420 U.S. 738, 746 (1975). Congress codified this principle in 1950 in Article 76 of the Uniform Code of Military Justice, which provides that final orders from completed court-martial "proceedings, findings, and sentences" are "final and conclusive," and that orders publishing them are "binding" upon the courts of the United States. *Id.* at 745; 10 U.S.C. § 876.

The Court in *Councilman* thus affirmed the longstanding "general rule" that "the acts of a court martial, within the scope of its jurisdiction and duty, cannot be controlled or reviewed in the civil courts, by writ of prohibition or otherwise." *Id.* at 746 (quoting *Smith v. Whitney*, 116 U.S. 167, 177 (1886)). The Court also clarified that Article 76 does not restrict or expressly address Article III subject-matter jurisdiction. *Id.* at 749. Instead, its language marks the terminal point of proceedings within the military justice system after which military judgments become final. *Id.* at 749–50.

Notwithstanding that general rule, collateral review of court-martial judgments in Article III courts has generally arisen in a few narrow contexts[1]: (1) habeas corpus petitions from military prisoners serving court-martial sentences (*see* 28 U.S.C. § 2241; *Burns*, 346 U.S. at 142); (2) Tucker Act claims for backpay or other economic benefits lost due to the court-martial conviction (*see* 28 U.S.C. §§ 1346(a), 1491; *United States v. Hohri*, 482 U.S. 64, 72 (1987)); and (3) judicial review of military correction-boards decisions concerning corrections of administrative records (*see* 10 U.S.C. § 1552; *Chappell v. Wallace*, 462 U.S. 296, 303 (1983) ("Board decisions are subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence.")). But these recognized avenues of collateral review provide relief from particular consequences under independent grants of jurisdiction; none confers authority to vacate the military judgment itself.

---

[1] *See generally*, WALTER B. HUFFMAN, ET AL., MILITARY LAW: CRIMINAL JUSTICE & ADMINISTRATIVE PROCESS § 12:1 (2026) (providing historical background of collateral review of court-martial proceedings and contemporary applications).

**B.**

Bergdahl was stationed near the Paktika Province, Afghanistan in 2009. He left his post without authorization on June 29, 2009, to report perceived leadership deficiencies in his unit, but was immediately apprehended by the Taliban-affiliated Haqqani network. Bergdahl was held hostage for nearly five years, during which he was subjected to brutal conditions. He was ultimately released as part of a prisoner exchange executed in May 2014 involving five Taliban members previously detained at Guantanamo Bay, Cuba. Several American servicemembers sustained injuries during search operations launched to rescue Bergdahl prior to his release.

On March 25, 2015, once he was back on U.S. soil, military authorities preferred court martial charges against Bergdahl for desertion with intent to shirk hazardous duty and misbehavior before the enemy in violation of the Uniform Code of Military Justice. The matter was later referred to a general court-martial authorized to impose a broader array of punishments. And, between 2015 and 2017, the Army prosecuted Bergdahl before the general court-martial at Fort Bragg, North Carolina. J.A. 493. During the next two years, Bergdahl filed three motions to dismiss alleging unlawful command influence ("UCI"). Bergdahl's UCI motions were based on statements made by then-Senator and Chairman of the Senate Armed Services Committee ("SASC"), John McCain, and then-candidate for President of the United States, Donald J. Trump.

The first UCI motion, filed on August 1, 2016, drew on Senator McCain's comment that "if it comes out that [Bergdahl] has no punishment, we're going to have to have a hearing in the Senate Armed Services Committee … it is well

known that in the searches for Bergdahl, after we know now he deserted, there are allegations that some American soldiers were killed or wounded, or at the very least put their lives in danger, searching for what clearly is a deserter. We need to have a hearing on that." J.A. 20 (citation modified). On September 28, 2016, the presiding military judge, Colonel Jeffery Nance, denied the motion on the grounds that "no member of [C]ongress, not even the Chairman of the SASC, holds command authority over the military." J.A. 495.

The second UCI motion, filed on January 20, 2017, related to remarks made by President Trump before taking office. These statements included comments characterizing Bergdahl as a "traitor, responsible for the death of five or six soldiers." J.A. 496. President Trump added that Bergdahl was "the worst, no good, [a] bum, a whack job, [a] piece of garbage, and a son of a bitch," who "deserved the death penalty." *Id.* (citation modified). On February 24, 2017, the military court denied this motion too, concluding that however "troubling," "disturbing and disappointing" President Trump's statements were, his status as a private citizen running for office was insufficient to meet the threshold for unlawful command influence. J.A. 41–42. The military court went on to stress that it would "take special care to ensure that the comments by Mr. Trump do not invade this trial." J.A. 42.

On October 16, 2017, Bergdahl pled guilty to one-day desertion and misbehavior without a pretrial agreement or waiver of his UCI claims. J.A. 477, 497. Two other significant events occurred that same day: First, now-President Trump, in remarks in the Rose Garden, stated that he could not "comment on Bowe Bergdahl because … they're setting up sentencing" while underscoring that "people have heard my comments in the past." J.A. 484. Second, Judge Nance (who was nearing mandatory retirement) applied for a position as an immigration

judge with the Department of Justice, and as his writing sample, he submitted his order denying Bergdahl's UCI motion based on then-candidate Trump's comments. J.A. 484, 505.

Bergdahl renewed his UCI motion as to President Trump's Rose Garden comments the following day, asserting that these most recent remarks "ratified former President Trump's disparaging pre-Inauguration comments about him." J.A. 498. Judge Nance held a hearing on October 23, 2017, to address Bergdahl's renewed motion and allowed defense counsel to examine him on *voir dire* about whether outside influences, including President Trump's Rose Garden statements, would impact his ability to sit impartially and fairly. J.A. 498. In response, Judge Nance made three statements: (1) he was not going anywhere "but the retirement pastures"; (2) he had never aspired to any rank and could not continue to advance his career, even if he wanted to; and (3) alluding to his upcoming retirement and lack of career aspirations, he did not "expect to go anywhere but back home as soon as the Army is done with [him] in a year." J.A. 498–99. Judge Nance did not mention his pending application to the DOJ to become an immigration judge, and Bergdahl did not know of the application to DOJ during this *voir dire*, or at any time during his court-martial proceedings. J.A. 540. Ultimately, Judge Nance denied Bergdahl's third UCI motion on October 30, 2017, concluding Bergdahl met his initial burden of UCI, but the government was able to prove beyond a reasonable doubt that the comments made by Trump did not constitute UCI. J.A. 144–48, J.A. 499.

On November 3, 2017, Bergdahl was sentenced to a dishonorable discharge, reduction to the lowest enlisted pay grade, and forfeiture of $10,000 in pay and allowances. J.A. 477. Bergdahl appealed his sentence, raising the same UCI claims and a new post-trial UCI claim, to the U.S. Army Court

of Criminal Appeals ("ACCA") and in September 2018, while Bergdahl's appeal was pending before the ACCA, DOJ publicly announced the appointment of Judge Nance as an immigration judge. J.A. 505–06. The ACCA affirmed Bergdahl's conviction by a vote of 2–1. J.A. 500; *see also United States v. Bergdahl*, 79 M.J. 512 (A. Ct. Crim. App. 2019).

Bergdahl next appealed this decision to the CAAF. J.A. 502. The CAAF by a vote of 3–2, affirmed the prior rulings. *Id.* While Bergdahl was before the CAAF, his counsel obtained a copy of Judge Nance's DOJ application, which included references to his role presiding over Bergdahl's court-martial proceedings. J.A. 505–06. Specifically, Judge Nance's sole writing sample was his ruling denying Bergdahl's UCI claim. J.A. 505. Bergdahl filed a petition for reconsideration and a motion to supplement the record with the CAAF based, in part, on the information regarding Judge Nance's DOJ application. J.A. 506. Bergdahl argued that Judge Nance's earlier judicial application—which was never disclosed—amounted to a violation of due process and R.C.M. 902 (Failure to Disclose Ground for Disqualification). *See* J.A. 354, J.A. 402, J.A. 404, J.A. 487. The CAAF denied his motions without prejudice "to seek a writ of error *coram nobis* from the appropriate court." J.A. 506.

Bergdahl then went back to the ACCA to file a petition for a writ of error *coram nobis* seeking review of his claims. *Id.* The ACCA denied his petition, without reaching the merits of his claims, noting that he did not meet the "stringent threshold requirements to establish eligibility for *coram nobis* review." J.A. 507 (citation modified).

On December 17, 2020, Bergdahl filed a writ-appeal petition with the CAAF seeking review of the ACCA's denial

of his *coram nobis* petition. *Id.* The CAAF denied his writ-appeal on February 2, 2021.

### C.

On February 17, 2021, Bergdahl initiated a lawsuit against the government in the United States District Court for the District of Columbia seeking "collateral review of an unconstitutional conviction by a general court-martial" on due process grounds under the Fifth Amendment of the United States Constitution, the Rules for Courts-Martial, and Rule 2.11 of the Rules of Judicial Conduct for Army Trial and Appellate Judges. J.A. 474–75. On August 2, 2021, the government filed a motion to dismiss. J.A. 507. On October 4, 2021, Bergdahl filed an opposition to the motion to dismiss and a cross-motion for summary judgment. *Id.* After a series of cross-motions, on July 25, 2023, the District Court granted in part and denied in part the government's motion to dismiss and granted in part and denied in part Bergdahl's motion for summary judgment. J.A. 553.

In its ruling, the District Court first addressed Bergdahl's UCI claims and found no reason to doubt the military courts' decisions. J.A. 533. However, on Bergdahl's second claim regarding whether the military had a duty to disclose Judge Nance's application to DOJ, the District Court concluded that the application should have been disclosed. J.A. 550–51. This decision was based in part on Judge Nance's use of a writing sample from Bergdahl's case for the job application. The District Court vacated all orders and rulings by the military judge as of October 16, 2017 (the date Judge Nance submitted his application to DOJ) and rendered them "void." J.A. 553–54.

Between August and September 2023, the government filed a Rule 59(e) motion to amend the District Court's July 25, 2023 order, seeking, among other things, clarification that further military proceedings were possible under the order. J.A. 559. Bergdahl filed his opposition to the Rule 59(e) motion. Bergdahl later filed a cross-motion for reconsideration, seeking reversal of the dismissed UCI claim, and the government opposed the motion. J.A. 559–60. The District Court granted the government's request to amend the order to make it clear that the military could conduct further proceedings. J.A. 577. The District Court then denied Bergdahl's motion for reconsideration on the UCI claim, citing the same reasons offered in the July 2023 opinion. J.A. 561–71. The government timely appealed, and Bergdahl also filed a timely cross-appeal. At Bergdahl's request, the District Court issued a stay pending appeal to this Court. J.A. 8.

## II.

This case turns on the nature of the relief requested. Because Bergdahl seeks to have his court-martial conviction declared expunged and without effect due to violations of the Constitution and military rules, and its consequences reversed, he effectively asked the District Court to vacate the military judgment. However, the authority to vacate a court-martial judgment belongs to tribunals exercising direct appellate review, not district courts conducting collateral review. *Councilman*, 420 U.S. at 746. Bergdahl's claim thus conflicts with that longstanding limitation. We therefore vacate the District Court's judgment and remand with instructions to dismiss Bergdahl's claim for lack of jurisdiction.[2]

---

[2] Although the government did not contest the District Court's subject-matter jurisdiction below, we may nevertheless hear challenges to jurisdiction because "defects in subject-matter

**A.**

Bergdahl sought to have the District Court enter a judgment that would declare his conviction and sentence were obtained in violation of the Constitution as well as various military rules. J.A. 487. In addition, he also sought an order in which "his conviction and sentence be expunged and that all rights, privileges, and property of which he has been deprived" because of his conviction "be restored." J.A. 487–88. He was successful in the District Court. After granting in part and denying in part both Bergdahl's and the government's motions for summary judgment, the District Court "vacated" numerous military-court orders and rulings, including "all decisions by [the appellate military courts]" that reviewed any court-martial orders after October 16, 2017. J.A. 559. Our understanding of Bergdahl's request for vacatur is confirmed by his request for relief in his opening brief on appeal. Bergdahl requested that we affirm the District Court's orders and remand the case "with instructions to set aside the court-martial and all related proceedings and dismiss the charges and specifications with prejudice." Bergdahl's Opening Br. 60.

The government argues that the District Court's exercise of jurisdiction was improper because district courts lack authority to vacate the judgments of the coordinate court-martial system. Government's Opening Br. 23–30. We agree.[3]

---

jurisdiction require correction regardless of whether the error was raised in district court." *United States v. Cotton*, 535 U.S. 625, 630 (2002).

[3] We have no occasion to decide whether a district court may entertain an action seeking expungement of records, generally, on collateral review, as opposed to expungement or set-aside of the court-martial conviction itself.

**B.**

*Councilman* squarely governs the jurisdictional issue before us. The case arose from the court-martial of Bruce R. Councilman, an Army officer charged with possessing and selling marijuana. *Councilman*, 420 U.S. at 739. At the time, Supreme Court precedent provided that military courts only had jurisdiction over court-martial charges when the preferred charges were "service connected." *Id.* at 740–43; *see also O'Callahan v. Parker*, 395 U.S. 258, 272–73 (1969) (establishing "service connection" rule). Before his court-martial officially began, Councilman filed suit in federal district court seeking a temporary restraining order and a preliminary injunction to prevent his impending court-martial. *Id.* at 741–42. He argued, among other things, that the court-martial lacked jurisdiction over his alleged offenses under the "service connection" rule in *Parker* as his drug related charges were not connected to his service in the Army. *Id.* The district court permanently enjoined the military from continuing with the court-martial proceedings, and the Tenth Circuit affirmed. *Id.* at 742. The Supreme Court reversed.

Although *Councilman* involved a pending court-martial, its discussion of the scope of Article III courts' review of court-martial proceedings establishes the governing distinction here between direct and collateral review. The Court explained that the "valid, final judgments of military courts . . . [are] not subject to direct review for errors of fact or law" by Article III courts. *Id.* at 746. Drawing on *Councilman*, we have explained that "[w]ith the exception of a collateral attack challenging the validity of a judgment for 'lack of jurisdiction or some other equally fundamental defect,' review by a civil court of a judgment issued by a military court is barred." *Piersall v. Winter*, 435 F.3d 319, 324 (D.C. Cir. 2006) (quoting *Councilman*, 420 U.S. at 747).

Accordingly, the jurisdiction of the District Court turns on the requested relief. A "collateral attack seeks, as a necessary incident to relief otherwise within the court's power to grant, a declaration that a judgment" suffers some fundamental defect. *Councilman*, 420 U.S. at 746–47; *see also id.* at 747 n.13 (citing FLEMING JAMES, CIVIL PROCEDURE § 11.5 (1965)). But that declaration must reach no further than "the matter at hand." *Id.* at 747. The writ of habeas corpus, for instance, tests the lawfulness of the detention without exerting any "correcting power over the proceedings of a court-martial." *Hiatt v. Brown*, 339 U.S. 103, 111 (1950) (citation modified). Put another way, collateral relief operates on the consequences of the judgment rather than the judgment itself. Reviewing a court-martial conviction for the purpose of vacating and rendering it "invalid for all purposes," *Councilman*, 420 U.S. at 747, is thus more akin to direct appellate review, which seeks to "revise[] and correct[] the proceedings in a cause already instituted," *Ortiz*, 585 U.S. at 436 (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 175 (1803)); *see* 28 U.S.C. § 2106 (permitting "court[s] of appellate jurisdiction" to "affirm, modify, vacate, set aside or reverse any judgment"). And "the review of a judgment on appeal" is "universally regarded as direct rather than collateral." JAMES, CIVIL PROCEDURE § 11.5; *see Councilman*, 420 U.S. at 747 n.13 (citing JAMES, CIVIL PROCEDURE § 11.5).

The Court then further explained that jurisdiction over a collateral claim also depends on "whether the relief is sought in an action otherwise within the court's subject-matter jurisdiction, on a ground that recognizes the distinction between direct and collateral attack, and in a form that the court is able with propriety to grant." *Councilman*, 420 U.S. at 752–53. In other words, collateral challenges should rest on an independent grant of jurisdiction, preserve the distinction between direct and collateral review, and seek relief that the

Article III court may properly grant. *Id.* If no recognized basis for jurisdiction is identified by a petitioner, then collateral review is impermissible.

**C.**

The type of review and relief sought by Bergdahl is not consistent with *Councilman*'s articulation of collateral relief. First, Bergdahl does not seek relief in the form of habeas corpus, back pay under the Tucker Act, or military correction of records. Thus, Bergdahl is not seeking relief under one of the three narrow circumstances in which collateral review of court-martial proceedings and convictions is routinely recognized as described *supra* in Part I.A.

Second, Bergdahl's argument that he is requesting that the judgment simply be declared void is significantly undercut by his description of the relief itself. *See* J.A. 487–88. Regardless of how Bergdahl styled his relief, we examine the complaint's "substance, not merely its form." *Crowley Gov't Servs., Inc. v. GSA*, 38 F.4th 1099, 1105 (D.C. Cir. 2022) (citation modified); *see also Am. Airlines, Inc. v. Austin*, 778 F. Supp. 72, 76 (D.D.C. 1991) ("The label attached to the prayer for relief contained in the pleadings is not controlling; the true nature of the relief must be determined."). Accordingly, when Bergdahl requested the District Court to "order[] that his conviction and sentence be expunged," J.A. 487–88, and "that all rights, privileges, and property" that were lost because of the conviction be restored, *id.*, he crossed the line between potentially permissible collateral relief and direct review of a court-martial judgment. Bergdahl is ultimately seeking to have his conviction set aside through the direct review of the merits of his claims. *See* Bergdahl's Opening Br. 60. Without an independent ground for jurisdiction, Article III courts cannot be used as an "opportunity to make a new record, [and] to prove

de novo in the District Court precisely the case" which was unsuccessful in the military court. *Burns*, 346 U.S. at 146.

Our conclusion here does not displace the holding in *Councilman* regarding a district court's ability to deem a court-martial judgment as void "as a necessary incident to relief otherwise" within the district court's authority to grant. 420 U.S. at 747–48. In that setting, deeming a judgment void means denying it *res judicata* effect so that it cannot justify or bar relief from its consequences; it does not mean vacating the judgment itself. *Id.* at 747. The problem here is that Bergdahl sought relief operating directly upon the conviction itself, rather than relief otherwise within the District Court's authority to grant, to which the validity of the conviction was merely incidental.

Bergdahl invoked federal question jurisdiction as the basis for the District Court's ability to hear his claims. Bergdahl's Opening Br. 2, 7–9. He appears to argue that *Councilman* implicitly confirmed federal-question jurisdiction, 28 U.S.C. § 1331, as a sufficient basis for collateral review because in that case, the Supreme Court requested supplemental briefing on jurisdiction and then proceeded to address the merits of the case without finding a jurisdictional defect. Bergdahl's Opening Br. 8. That may be correct insofar as *Councilman* recognized district-court jurisdiction over a proper collateral action. Responding to specific arguments advanced by the litigants, the Court expressly rejected the proposition that Article 76 categorically strips Article III courts of jurisdiction over collateral challenges. *Councilman*, 420 U.S. at 748–53. The Court nevertheless held that Congress did not confer on federal district courts jurisdiction directly to review court-martial determinations. *Id.* at 746. As we have since indicated, § 1331 may support a non-habeas collateral challenge to a court-martial judgment. *See Larrabee v. Del*

*Toro*, 45 F.4th 81, 86 (D.C. Cir. 2022). But because § 1331 confers original, not appellate, jurisdiction, it does not authorize a district court to vacate or set aside the military judgment itself.

**III.**

Accordingly, we vacate the lower court's decision because the District Court lacked jurisdiction on collateral review to vacate this court-martial judgment, as that authority belongs exclusively to tribunals with the authority to exercise direct appellate review. *See Councilman*, 420 U.S. at 746. We remand this case to the District Court to dismiss Bergdahl's claims for lack of jurisdiction.

*So ordered.*